**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AFFILIATED FM INSURANCE COMPANY as subrogee of TERMINAL PROPERTY OWNER LLC,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX CONSUMER PRODUCTS, INC.; ELECTROLUX HOME PRODUCTS, INC.,; ELECTROLUX NORTH AMERICA, INC.; and STEPHANIE SMITH<br><br>Defendants. | : | CIVIL ACTION<br><br>Case No.: __________ |

## COMPLAINT

Plaintiff, Affiliated FM Insurance Company as subrogee of Terminal Property Owner LLC, by and through its undersigned counsel, BUTLER WEIHMULLER KATZ CRAIG LLP, brings this action against the above-named defendants and, in support thereof, allege the following:

## PARTIES

1. Plaintiff, Affiliated FM Insurance Company ("Affiliated FM"), a citizen of the State of Rhode Island, is a business entity organized and existing under the laws of Rhode Island and maintains its principal place of business in Johnston, Rhode Island.

2. At all times material hereto, Affiliated FM provided property insurance to Terminal Property Owner LLC ("Terminal Property") under a policy of property insurance which was in full force and effect on all relevant dates and at all relevant times herein.

3. Pursuant to the terms of its policy and applicable law, Affiliated FM is subrogated to the rights and interests of Terminal Property against third parties

responsible for a loss covered under its policy, including the claims giving rise to the within cause of action.

4. Defendants, Electrolux Consumer Products, Inc. and Electrolux Home Products, Inc. are corporations organized and existing under the laws of Delaware with their principal places of business in Charlotte, North Carolina.

5. Electrolux North America, Inc. (collectively with Electrolux Consumer Products, Inc. and Electrolux Home Products, Inc., the “Electrolux Defendants”) is a corporation organized and existing under the laws of Ohio with its principal place of business in Charlotte, North Carolina

6. Electrolux Defendants are in the business of, *inter alia*, designing, manufacturing, assembling, testing, inspecting, marketing, distributing, and/or selling consumer appliances, such as the Electrolux electric smooth top range model number FFEH3051VSE (Serial No. VF22001294) at issue in this action (hereinafter the “subject range”). Upon information and belief, the Electrolux Defendants regularly conduct business in Pennsylvania.

7. Stephanie Smith is an adult individual residing at 305 E Upsal St, Philadelphia PA 19119.

**JURISDICTION AND VENUE**

8. Pursuant to 28 U.S.C. § 1332, subject matter jurisdiction exists because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

9. This Court has personal jurisdiction over the Electrolux Defendants by way of Pennsylvania’s Long Arm Statute, 42 Pa. Stat. §5322.

10. Personal jurisdiction exists over the Electrolux Defendants because they purposefully availed themselves of the benefit of the laws of this judicial district by regularly transacting and/or conducting business in the territorial jurisdiction of this United States District Court, which is located in the Commonwealth of Pennsylvania.

11. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

12. Terminal Property owns the Piazza Alta apartment building located at 1099 Germantown Ave., Philadelphia, PA 19123 (the "Piazza Alta").

13. The Electrolux Defendants designed, manufactured, tested, inspected, distributed, marketed, assembled, sold and/or placed into the stream of commerce Frigidaire-branded electric smooth top ranges, including the subject range at issue in this case.

14. Prior to December 22, 2024, Terminal Property purchased several hundred Electrolux ranges, including the subject range, and installed them at the Piazza Alta, including installing the subject range in Unit 518.

15. At all times material hereto, the subject range was not modified, changed, altered or abused by Terminal Property or other users at said property prior to or during its use.

16. At all times material hereto, the subject range was operated in a normal, ordinary, foreseeable and intended matter.

17. On or about December 22, 2024, Stephanie Smith occupied Unit 518 and was in the process of moving out of Piazza Alta when she placed certain items on top of the subject range, which was off at the time.

18. Thereafter, while in proximity to the subject range's control knobs, an inadvertent activation caused one of the burners to turn to the "ON" position.

19. Shortly thereafter, a fire started on top of the subject range and spread to nearby combustibles causing significant damage. Moreover, the heat from the fire triggered the Piazza Alta's sprinkler system, drenching portions of the building in water. The fire, smoke, soot and/or water caused substantial damage to the Piazza Alta and the personal property located therein.

20. In addition, the damage from the fire rendered a number of units unlivable, resulting in lost rents and other financial injuries to Terminal Property.

21. Post-fire analysis revealed that the subject range's control knobs were defective in design, manufacture and warnings, as they lacked adequate protective guards or mechanical safeguards to prevent inadvertent activation. The incident could have been avoided if proper safety mechanisms had been implemented to prevent the unintentional activation of the range.

22. As a direct and proximate result of the defects and/or malfunction of the subject range, Terminal Property sustained and incurred damage to its real and personal property and suffered other consequential and incidental damages including clean-up costs, repair, lost rent and other associated expenses.

23. As a direct and proximate result of the aforementioned defects, Terminal Property sustained the damages described herein in an amount in excess of $4,000,000.

24. Affiliated FM is subrogated to the rights and interests of Terminal Property for any claims arising under the policies and for monies paid thereunder, including the claims giving rise to the within cause of action.

**COUNT I – STRICT LIABILITY**

25. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

26. At all times material hereto, the Electrolux Defendants were engaged in the business of designing, manufacturing, distributing, supplying, selling, developing, engineering, fabricating, preparing, assembling, producing, inspecting, testing, certifying, marketing, advertising, branding, labeling and/or placing into the stream of commerce electric ranges and specifically designed, manufactured, tested, inspected, distributed, marketed, assembled, sold and placed into the stream of commerce the subject range at issue in this case.

27. The subject range, which was designed, manufactured, tested, inspected, distributed, marketed, assembled, sold and placed into the stream of commerce by the Electrolux Defendants, was not modified, changed, altered or abused by Terminal Property or other users at said property prior to or during its use.

28. The Electrolux Defendants knew and intended that its range would be used by members of the general public, and knew of the specific uses, purposes and requirements for which the subject range would be utilized.

29. The Electrolux Defendants designed, manufactured, tested, inspected, distributed, marketed, assembled, sold and placed into the stream of commerce the

subject range, including its control knobs and other component parts, in a defective condition, unreasonably dangerous to the general public, including Terminal Property.

30. The Electrolux Defendants knew, or should have known, that the subject range would, and did, reach users without substantial change in the condition in which it was originally sold.

31. The Electrolux Defendants failed to provide a product which was fit and adequate for its foreseeable and intended use, and free from defects in its design, manufacture, distribution, warnings, and/or instructions.

32. The subject range was in a defective condition, unreasonably dangerous to Terminal Property because it failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

33. The use of the subject range presented a risk which outweighed its utility.

34. The subject range failed during the course of the normal and/or anticipated use of the product due to the presence of defect(s).

35. The failure, which occurred as a result of the presence of defect(s), of the subject range was the proximate cause of the catastrophic damage to the Piazza Alta which occurred on December 22, 2024.

36. As a result of the failure, Terminal Property sustained significant damages.

37. The Electrolux Defendants are strictly liable for the product failure and the resulting damages incurred by Terminal Property by improperly designing, manufacturing, distributing, supplying, selling, developing, engineering, fabricating, preparing, assembling, producing, inspecting, testing, certifying, marketing, advertising, branding, and/or labeling the subject range in a defective condition.

38. For these reasons, the Electrolux Defendants are strictly liable to Plaintiff under Section 402A of the Restatement (2d) of Torts and the applicable caselaw of the Commonwealth of Pennsylvania.

39. Affiliated FM is subrogated to the rights and interests of Terminal Property for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, Electrolux Consumer Products, Inc.; Electrolux Home Products, Inc. and Electrolux North America, Inc. in an amount in excess of $4,000,000, plus costs incident to this suit, interest, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT II – NEGLIGENCE**

39. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

40. At all times material hereto, the Electrolux Defendants owed a duty to consumers, like Terminal Property and its tenants, to use reasonable care in the way they designed, manufactured, assembled, tested, marketed, branded, and distributed, *inter alia*, ranges, including the subject range at issue in this case.

41. At all times material hereto, the Electrolux Defendants knew or should have known of the foreseeable risk of fire inherent in their ranges, including the subject range at issue here.

42. The Electrolux Defendants breached the duty of care they owed to consumers, like Terminal Property and its tenants, and were negligent and careless in

designing, manufacturing, assembling, testing, inspecting, marketing, branding, distributing, selling and placing into the stream of commerce the subject range in one or more of the following respects:

a. carelessly and negligently failing to design, manufacture, inspect, assemble, distribute, sell, and/or market a properly functioning and defect-free range, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

b. carelessly and negligently failing to properly determine that the range, including its control knobs and other components were not in a safe condition and free of all material defects, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

c. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the subject range when Defendant Electrolux knew or should have known that the subject range was unsafe and unfit for its intended use;

d. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the subject range when it knew or should have known that the range would be inadequate for the reasons for which it was purchased;

e. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the subject range, which was unreasonably dangerous, because the subject range's control knobs

allowed inadvertent activation of the range under normal, intended and foreseeable operating conditions;

f. carelessly and negligently failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute and/or test the subject range and its control knobs and other components, prior to introducing it into the stream of commerce;

g. carelessly and negligently failing to provide adequate and sufficient warnings and instructions with respect to the subject range;

h. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the subject range with defective control knobs which were inadequate to prevent inadvertent activation;

i. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing and/or marketing the range in a defective condition because its control knobs had insufficient and inadequate protective guards to prevent inadvertent activation of the range and ignition of nearby combustibles;

j. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the subject range in a defective condition because its control knobs had insufficient and inadequate mechanical means to prevent inadvertent activation of the range;

k. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the subject range in a defective condition because its control knobs had insufficient and inadequate mechanical operation sequence to prevent inadvertent activation of the range;

l. carelessly and negligently designing, manufacturing, inspecting, assembling, distributing, selling, and/or marketing the range in an unreasonably dangerous manner because it allowed the control knobs to be unintentionally, unknowingly and inadvertently activated to the "on" position;

m. carelessly and negligently designing, manufacturing, assembling or installing the control knobs or other component parts in the subject range;

n. failing to adequately inform and warn purchasers and ultimate users of the defect that allowed the control knobs to be unintentionally, unknowingly and inadvertently activated to the "on" position; and/or

o. failing to hire and/or train competent employees, contractors, and/or subcontractors.

43. As a direct and proximate result of the Electrolux Defendants' aforementioned actions, and/or omissions, the Electrolux Defendants acted negligently or carelessly and are therefore liable to the Plaintiff for the damages suffered.

44. As a direct and proximate result of the aforementioned negligent and careless conduct of the Electrolux Defendants, Terminal Property sustained and incurred damage to its real and personal property and caused other consequential and incidental

damages including clean-up costs, repair, and other associated expenses. Further, as a result of the fire, a number of Terminal Property's tenants had to vacate their units in the Piazza Alta for a period of time in order for the property to be restored to its pre-fire condition.

45. Affiliated FM is subrogated to the rights and interests of its Terminal Property for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, Electrolux Consumer Products, Inc.; Electrolux Home Products, Inc. and Electrolux North America, Inc. in an amount in excess of $4,000,000, plus costs incident to this suit, interest, attorneys fees and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

46. Plaintiff repeats and incorporates herein by reference the allegations in the foregoing paragraphs of the Complaint.

47. The Electrolux Defendants designed, manufactured, installed, supplied and/or sold the subject range, and were merchants with respect to goods of the kind purchased by Terminal Property.

48. There was an implied warranty that the subject range was merchantable.

49. The Electrolux Defendants breached the implied warranty of merchantability in one or more of the following ways:

a. Designing, manufacturing, installing, supplying, and/or selling an electric range that did not pass without objection in the industry;

b. Designing, manufacturing, installing, supplying, and/or selling an electric range that was not of fair and average quality; and/or

c. Designing, manufacturing, installing, supplying, and/or selling an electric range that was not fit for the ordinary purposes to which it would reasonably and foreseeably be put.

50. Defendants' breach of the implied warranty of merchantability was the direct and proximate cause of the fire and Plaintiff's ensuing damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, Electrolux Consumer Products, Inc.; Electrolux Home Products, Inc. and Electrolux North America, Inc. in an amount in excess of $4,000,000, plus costs incident to this suit, interest, attorneys fees and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT IV – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

51. Plaintiff repeats and incorporates herein by reference the allegations in the foregoing paragraphs of the Complaint.

52. At the time of Terminal Property's purchase and/or receipt of the subject range, Defendant knew of or had reason to know that the particular purpose of said range would be ordinary and routine and would be expected to withstand foreseeable uses.

53. At the time of Terminal Property's purchase and/or receipt of the subject range, The Electrolux Defendants knew or had reason to know that Terminal Property was relying upon Defendants' skill, expertise, and judgment to design, manufacturer and/or supply an electric range suitable for that purpose.

54. There existed an implied warranty that Defendants' range would be fit for the particular purposes to which Terminal Property and its tenants would reasonably and foreseeably use it.

55. Defendants breached the implied warranty of fitness for a particular purpose in one or more of the following ways:

a. Designing, manufacturing, installing, supplying, and/or selling an electric range that did not conform to the aforementioned warranties;

b. Designing, manufacturing, installing, supplying, and/or selling a defective electric range; and/or

c. Failing to ensure the electric range was free from any and all defects before it left its possession, custody, and/or control.

56. Defendants' breach of the implied warranty of fitness for a particular purpose was a direct and proximate cause of the fire and Plaintiff's ensuing damages.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, Electrolux Consumer Products, Inc.; Electrolux Home Products, Inc. and Electrolux North America, Inc. in an amount in excess of $4,000,000, plus costs incident to this suit, interest, attorneys fees and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT V – NEGLIGENCE**

57. Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

58. At all times material hereto, Stephanie Smith owed a duty to Terminal Property and its tenants, to use reasonable care in the way she used and/or maintained her unit, Unit 518.

59. Defendant Smith breached the duty of care owed to Terminal Property and its tenants by failing to use and maintain her unit in a safe manner, free from the unreasonable risk of fire.

60. Specifically, she placed combustible materials on top of a stove in her unit and inadvertently activated the stove as she was walking out of the unit, igniting the combustibles.

61. As a direct and proximate result of Defendants' negligence as aforesaid, Terminal Property sustained and incurred damage to its real and personal property including clean-up costs, repair, and other associated expenses.

62. Affiliated FM is subrogated to the rights and interests of its Terminal Property for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

WHEREFORE, Plaintiff respectfully requests judgment against Defendant, Stephanie Smith in an amount in excess of $4,000,000, plus costs incident to this suit, interest, attorneys fees and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues so triable.

BUTLER WEIHMULLER KATZ CRAIG LLP

s/Richard D. Gable, Jr.
RICHARD D. GABLE, JR., ESQ.
rgable@butler.legal
MICHAEL J. WOLFER, ESQ.
mwolfer@butler.legal
1818 Market Street, Suite 2740
Philadelphia, PA 19103
*Attorneys for Plaintiff, Affiliated FM Insurance Company as subrogee of Terminal Property Owner LLC*

Dated: November 16, 2026